UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH SCHEINER, Special Administrator of the Estate of Anthony J. Scheiner, Deceased, | ) ) ) ) |
| Plaintiff, | ) Case No. 3:20-cv-00038-GCS ) |
| vs. | ) ) |
| TONY M. GUFFEY and TRON MECHANICAL, INC. d/b/a TMI CONTRACTORS, | ) ) ) ) |
| Defendants. | ) ) |
| TONY M. GUFFEY and TRON MECHANICAL, INC. d/b/a/ TMI CONTRACTORS, | ) ) ) ) |
| Third- Party Plaintiffs, | ) ) |
| vs. | ) ) |
| PEGGY LOFTIS, Administrator of the estate of Jessica Lynn Shutts, Deceased, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

**INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Joseph Scheiner, the duly acting Special Administrator of the Estate of Anthony J. Scheiner, filed suit against Defendants Tron Mechanical, Inc., d/b/a TMI Contractors ("TMI") and Tony Guffey in the Circuit Court of Cumberland County,

Illinois ("Cumberland") on November 17, 2019. (Doc. 1, Exh. A, p. 3). In his complaint, Plaintiff alleges one count of wrongful death against both defendants. *Id*. at p. 4-6. Plaintiff predicates these counts on an automobile accident in which Defendant Guffey, who is an employee of Defendant TMI, collided with a car in which Mr. Scheiner was a passenger. *Id*. at p. 4. Plaintiff also requests funeral and burial expenses from both defendants in separate counts. *Id*. at p. 7-8.

On January 9, 2020, Defendants removed the matter to this Court. (Doc. 1). Defendants filed a third-party complaint against Peggy Loftis, the duly acting Special Administrator of Jessica Shutts. (Doc. 28). Ms. Shutts drove the vehicle which Defendant Guffey collided with during the accident at issue. *Id*. at p. 2. As third-party plaintiffs, Defendants alleged that through a variety of omissions and actions while driving, Ms. Shutts breached her duty to exercise due care and caution. *Id*. However, Ms. Loftis entered a settlement with Plaintiff in a case against her in Cumberland on November 12, 2017. (Doc. 44, p. 3). As a result of this settlement, Ms. Loftis's insurance company, Country Mutual Insurance Company ("Country Mutual") paid the policy limit of $50,000 to Plaintiff. *Id*. Pursuant to Illinois law, this settlement extinguished any and all liability between Ms. Loftis and Defendants. (Doc. 60); *see also* 740 ILL. COMP. STAT. § 100/1, *et seq*. The Court therefore entered summary judgment in Ms. Loftis's favor and dismissed her from this suit on June 4, 2021. (Doc. 60).

Before the Court is Defendants' motion for summary judgment. (Doc. 46). For the reasons delineated below, the motion for summary judgment is **DENIED.**

## FACTUAL ALLEGATIONS

This case concerns a collision between Defendant Guffey and Ms. Jessica Lynn Shutts, in which both Ms. Shutts and the decedent, Mr. Scheiner, died. The collision occurred on a two-lane, north-south road which intersects with Illinois 130 ("York Road"). (Doc. 47, p. 2). To the north, Illinois 130 curves eastward in an "S" shape. *Id*. at p. 3. To the south, Illinois 130 is straight. *Id*. An overpass provides passage over a railroad track approximately 925 feet south of the intersection between Illinois 130 and York Road. *Id*. South of the overpass, approximately 1,870 feet away from the accident site, a speed limit sign shows a limit of forty-five miles per hour. *Id*.

On November 12, 2017, Defendant Guffey drove a 2012 Chevrolet Silverado northward on York Road. (Doc. 1, Exh. 1, p. 3). At the same time, Ms. Shutts drove a 2003 Chevrolet S-10 southward on Illinois 130, carrying Mr. Scheiner as a passenger. *Id*. At the time of the accident, Illinois 130 was wet. (Doc. 47, p. 4). Ms. Shutts lost control of her vehicle, crossed the center line, and slid sideways into the northbound lane. *Id.* Defendant Guffey then collided with Ms. Shutts. *Id*. Ms. Shutts was traveling beyond the posted speed limit at forty-eight miles per hour at the time of the collision. *Id*.

Defendant Guffey was traveling at approximately sixty miles per hour as he approached Ms. Shutts from the south. (Doc. 47, p. 5). Defendant Guffey's GPS data showed that he entered the forty-five mile per hour zone at sixty miles per hour approximately twenty-three seconds before the collision. *Id*. However, he decelerated and reached an average speed of fifty-five miles-per-hour upon reaching the intersection. *Id*. The recorded data from Defendant Guffey's vehicle shows that Defendant Guffey

applied his brakes approximately 2.5 seconds prior to impact. *Id*. at p. 6. At that time, Defendant Guffey's speed was approximately forty-nine miles per hour. *Id*. at p. 7. One half second prior to the collision, Defendant Guffey decelerated to thirty-seven miles per hour. *Id*.

Defendants' expert, Mr. Daniel Fittanto, estimated that the distance between Defendant Guffey and Ms. Shutts was approximately 375 feet three seconds prior to the collision. (Doc. 47, p. 7). He therefore determined that Defendant Guffey had approximately 1.7 seconds and 200 feet from which to react after Ms. Shutts crossed the center line. *Id*. Mr. Fittanto concluded that Defendant Guffey could not have avoided the collision even if his speed complied with the limit at the time of the impact. *Id*.

In contrast, Plaintiff's expert, William E. Dickinson, found that had Defendant Guffey been traveling at or below the posted speed limit upon reaching the speed limit sign, he would have been able to avoid colliding with Ms. Shutts. (Doc. 47, p. 9). Mr. Dickinson estimated that Defendant Guffey would have had an additional 350 feet and five seconds in which to avoid the collision. *Id*.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan. Life Ins.*

*Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his or her claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his or her pleadings; rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which he or she bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th

Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## ANALYSIS

This Court exercises diversity jurisdiction over this case. *See generally* (Doc. 1). Federal courts sitting in diversity apply federal procedural law and the substantive law of the state in which the court sits. *See Nat'l American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). In order to succeed on a claim for negligence under Illinois law, a plaintiff must establish: (i) that the defendant owed the plaintiff a duty of care, (ii) that the defendant breached that duty, and (iii) that the breach was the proximate cause of the plaintiff's injuries. *See First Springfield Bank & Trust v. Galman*, 720 N.E.2d 1068, 1017 (Ill. 1999) (internal citations omitted). Defendants challenge only the final element on their motion for summary judgment. (Doc. 47, p. 11).

"Illinois law defines proximate cause as 'a cause that, in the natural or ordinary course of events, produced the plaintiff's injury.'" *Archibald v. Orbit Express, Inc.*, Case No. 3:18-CV-1101-MAB, 2020 WL 5237095, at *3 (S.D. Ill. Sept. 2, 2020)(quoting ILL. PATTERN JURY INSTRUCTIONS – CIVIL, No. 15.01). Two elements establish proximate cause: cause-in- fact and legal cause. *See Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012)(citing *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992)). An analysis of

cause-in-fact examines whether there is a reasonable certainty that the defendant's conduct caused the injury. *See Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 446 (Ill. 2010). The traditional test for determining cause-in-fact is a "but-for" analysis where the injury would not have occurred absent the defendant's conduct in question. *See Turcios v. DeBrueler Co.*, 32 N.E.3d 1117, 1124 (Ill. 2015). However, courts may also apply the "substantial factor" test. *See Young v. Bryco Arms*, 821 N.E.2d 1078, 1086 (Ill. 2004). This test is appropriate when multiple factors may have combined to cause the injury at issue. *Id.* Under this test, a defendant's conduct is a cause-in-fact of the injury only if it was a material element and substantial factor in bringing about the injury. *Id.*

In contrast, legal cause is only established if the defendant's conduct "is so closely tied to the plaintiff's injury that he should be held legally responsible for it." *Young*, 821 N.E.2d at 1086 (internal quotations and marks omitted). It is "essentially a question of foreseeability," and the Court must determine "whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct" or whether the injury is "so highly extraordinary that imposing liability is not justified." *Blood*, 668 F.3d at 546 (emphasis and citations omitted). A plaintiff may establish legal cause by presenting evidence that he or she suffered the type of injury which is the expected consequence of the defendant's wrongful conduct. *See BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 758 (7th Cir. 2011).

Even though there may be multiple proximate causes of an injury, a defendant is liable for his or her negligent conduct so long as it is one of the proximate causes contributing to the injury. *See Ray v. Cock Robin, Inc.*, 310 N.E.2d 9, 11-12 (Ill. 1974).

Typically, this question is reserved for the trier of fact. *See Blood*, 668 F.3d at 546. A court may determine the issue of proximate cause as a matter of law only when the facts are undisputed and a single inference can be drawn from the facts. *Id*. Only "rarely are the facts so clear that the court can resolve the issue as a matter of law." *Palay v. Untied States*, 349 F.3d 418, 432-433 (7th Cir. 2003).

### I. Whether the Accident was an Unavoidable Collison

Defendants urge the Court to consider as established doctrine that when a plaintiff swerves into a defendant's right-of-way causing an unavoidable collision, the defendant's acts and omissions are immaterial; thus, the defendant cannot be the proximate cause of the injury. (Doc. 47, p. 12). Such accidents, in which one driver suddenly crosses into the lane of another, have been referred to as "unavoidable collisions." *See Coole v. Central Area Recycling*, 893 N.E.2d 303, 310 (Ill. Ct. App. 2008) (internal citations omitted). Illinois courts have recognized that the question of whether an accident is an unavoidable collision is pertinent to the proximate cause determination. *Id*. Defendants describe the doctrine as one which overrides a defendant's negligent actions in the proximate cause analysis. However, the unavoidable collision doctrine is instead a framework courts apply to evaluate whether the defendant breached his or her duty of care at all. *See, e.g., Balfour v. Citgo Petroleum, Corp.*, 452 N.E.2d 46, 49 (Ill. Ct. App. 1983)(stating that "it is not true . . . that if [the appellant] was driving on the right side of the road at the time of the accident, she owed no further duty to plaintiff"). *See also Young v. Texas Eastern Transmission Corp.*, 484 N.E.2d 325, 328 (Ill. Ct. App. 1985)(holding that it was reasonable for a defendant to take evasive action in the face of an unavoidable

collision because that defendant was in fear for his life).

The unavoidable collision doctrine places a driver's actions during an accident into context and perspective. For example, Illinois courts do not evaluate reasonable actions to avoid a collision with the benefit of hindsight. *See Turner v. Roesner*, 549 N.E.2d 1287, 1291 (Ill Ct. App. 1990) (internal citations omitted). Instead, courts consider whether a defendant exercised the same care as a reasonable person would under the same circumstances. *Id*. Accordingly, when one driver unexpectedly swerves into another driver's lane, thus creating a sudden and imminent crash, courts do not expect the latter driver to possess the same "coolness and judgment" as those facing no threat of imminent peril. *Yates v. Shackelford*, 784 N.E.2d 330, 338 (Ill. Ct. App. 2002). For example, when a driver otherwise follows the speed limit, maintains a proper lookout for oncoming traffic, and demonstrates reasonable care prior to a crash, but fails to brake to prevent an unavoidable collision, Illinois courts have held that the driver's failure to brake cannot be considered a proximate cause of the accident because a reasonable person in that situation may have failed to brake. *See Wilmere v. Stibolt*, 504 N.E.2d 916, 918 (Ill. Ct. App. 1987), overruled on other grounds by *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 593 N.E. 2d 522 (Ill. 1992). The general principle of the unavoidable collision doctrine is that a party which gives another reasonable cause for alarm cannot avoid liability by complaining that the reactive party is so alarmed that the party failed to exercise sound judgment. *Id*. (internal quotations omitted).

Even if the unavoidable collision doctrine applies to a case, courts may still consider whether the accident was "truly unavoidable," or whether a defendant's actions

prior to the collision created "deficits in [the defendant's] ability to timely react." *Shores v. Dupps Company, Inc.*, Case No. 4:18-cv-04147-JEH, 2020 WL 6302362, at *7 (C.D. Ill. Sept. 14, 2020). The unavoidable collision doctrine does not permit a defendant to act contrary to a reasonable person; rather, it highlights the circumstances which alter how a court should expect a reasonable person to act in that situation. Whether a defendant might otherwise have avoided the collision by refraining from speeding, adapting his or her speed to fit the weather and road conditions, or keeping a better lookout therefore all remain as pertinent questions to the proximate cause analysis. *See, e.g.*, *Guy v. Steurer*, 606 N.E.2d 852, 855 (Ill. Ct. App. 1992)(applying the unavoidable collision doctrine, but noting that questions as to the parties' relative speeds and distances must be determined by a trier of fact).

In support of their contention that the unavoidable collision doctrine absolves a defendant of proximate causation, Defendants cite to a number of cases. However, in each case to which Defendants point, the courts did not hold that a driver in the proper lane cannot proximately cause a swerving driver's injuries in an unavoidable collision. Rather, the courts held that the plaintiffs failed to present sufficient evidence to demonstrate that a genuine dispute as to the defendants' negligence remained sufficient to survive summary judgment or to send the case to a jury. For instance, in *Walling v. Lingelbach*, the Illinois Supreme Court rejected the plaintiff's assertion that the defendant was contributorily negligent during an unavoidable collision because that defendant failed to lookout and exercise proper control. The Illinois Supreme Court noted that when the jury found contributory negligence, it "abandoned the domain of allowable inferences and

entered the area of speculation" based on the evidence the plaintiff had presented. 357 N.E.2d 530, 533 (Ill. 1976).

Defendants' remaining case examples fare no better than *Walling*. In *Young*, the Court examined only whether the defendant's decision to take evasive action was reasonable in light of the unique circumstances presented by an unavoidable collision. 484 N.E.2d at 328. To the extent that the Court considered other questions of proximate cause, it noted that there "is no showing whatever on this record that [the defendant's] reaction to the sight of decedent's truck crossing into his lane was in any sense dilatory." *Id*. Likewise, in *Wilmere*, the Court found that the defendant's speed and lookout were merely "remote factual possibilities" too tenuous to defeat summary judgment on the evidence before it. 504 N.E.2d at 648. Similarly, the Court in *Williams v. Elkin* held that the testimony on which the plaintiff relied failed to point to "any evidence of negligence attributable to" the defendant. 608 N.E.2d 108, 111 (Ill. Ct. App. 1992). In *Yates*, the Court emphasized that there was no evidence the defendant proximately caused the plaintiff's injury when there was no inclement weather, and the defendant traveled at the posted speed limit and applied his brakes. 784 N.E.2d at 338. In *Smith v. Hancock*, the Court noted that the evidence did not show that the defendant was speeding prior to the unavoidable collision; accordingly, there was no evidence to support finding the defendant was negligent. 133 N.E.3d 666, 672 (Ill. Ct. App. 2019). And finally, in *Coole*, the Court stated that the plaintiff "could not point to evidence that [the defendant] could have avoided the collision" if the defendant had driven slower, kept a better lookout, or applied the brakes. 893 N.E.2d at 309. In each of these cases, the courts held that there was no

proximate cause only because the plaintiff failed to provide sufficient evidence to support a finding of causation.

In contrast, here, a genuine question of material fact remains as to whether the speed at which Defendant Guffey was traveling proximately caused Plaintiff's injury. The parties agree that Ms. Shutts lost control of her vehicle, crossed the center line, and collided with Defendant Guffey. (Doc. 47, p. 2); (Doc. 55, p. 6). The parties also agree that Defendant Guffey was traveling at sixty miles-per-hour when he entered the forty-five miles per hour speed limit zone where the accident occurred. (Doc. 47, p. 5); (Doc. 55, p. 7). Defendant Guffey's average speed from the overpass to the intersection where the collision occurred was fifty-five miles per hour. (Doc. 47, p. 6); (Doc. 55, p. 7).

Defendants argue that Defendant Guffey's speed was not a proximate cause of the collision. (Doc. 47, p. 8). According to Defendants' expert, Daniel Fittanto, Defendant Guffey's reduction of speed to forty-five miles per hour when Ms. Shutts lost control of her vehicle would have afforded Defendant Guffey only an additional .32 seconds in which to react, making his speed immaterial to the collision. *Id.* However, Plaintiff's expert, William E. Dickinson, found that traveling at the posted speed limit at the time of the collision would have provided Defendant Guffey an additional five seconds in which to brake or steer away from Ms. Shutts's vehicle. (Doc. 55, p. 8). Mr. Dickinson further found that, based on the GPS data available from Defendant Guffey's vehicle, had Defendant Guffey begun traveling at forty-five miles-per-hour when he first entered the reduced speed zone, he would have had "more than adequate time and distance to avoid colliding" with Ms. Shutts. *Id.* at p. 7. Finally, because the roads were wet at the time of

the collision, Mr. Dickinson opined that a reasonable person would slow down below the posted speed limit by about one-third. A reasonable jury may thus find that the failure to do so amounts to a proximate cause of the collision. The appropriate weight to assign the competing opinions of Mr. Fittanto and Mr. Dickinson is a question left for the trier of fact. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011) (internal citations omitted). Accordingly, summary judgment is not appropriate.

## II. Whether Defendant Guffey's Vehicle was a Condition of the Collision rather than its Cause

Defendants next argue that Defendant Guffey's speed was not a proximate cause of the collision, but rather was a condition which made the collision possible when Ms. Shutts lost control of her vehicle. (Doc. 47, p. 18). Illinois courts have recognized a difference between the cause of a tort and a condition which makes the tort possible. *See Abrams v. City of Chicago*, 811 N.E.2d 670, 675 (Ill. 2004). However, this language is most frequently used when the plaintiff's injury results from the subsequent, independent actions of a third party, rather than from the defendant's actions. *See Archibald*, 2020 WL 5237095, at *3 (internal citations omitted). When one party's negligence furnishes a condition by which an injury is made possible and that condition leads to an injury due to the later independent act of a third person, the creation of the condition is not the proximate cause of the injury. *Abrams*, 811 N.E.2d at 675. "The subsequent independent act becomes the effective intervening cause which breaks the causal connection, and itself becomes the proximate cause." *Shicheng Guo v. Kamal*, 155 N.E.3d 517, 525 (Ill. Ct. App. 2020) (internal quotations omitted).

The Illinois Supreme Court has emphasized that this analysis "applies to causes in which the injury is caused by the intervening acts of third parties." *Young*, 821 N.E.2d at 1087 (citing *Abrams*, 811 N.E.2d at 675). Here, however, there is no intervening third party. The cause and condition dichotomy is therefore inapplicable to this case.

Regardless of the language used to describe Defendant Guffey's speeding, the causation analysis ultimately turns on the questions of "whether absent the defendant's conduct, that injury still would have occurred . . ." and "whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Galman*, 720 N.E.2d at 1072-73. A reasonable jury could find that a reasonable person would foresee a collision with another driver as a result of speeding on wet road conditions. Likewise, a reasonable jury could determine that, absent Defendant Guffey's speeding, the accident would not have occurred. Accordingly, summary judgment is not appropriate on this issue.

### III. Whether the Illinois Dead-Man's Act Bars the Admission of Mr. Fittanto's Opinion and Defendant Guffey's Testimony

Plaintiff alleges that Defendant Guffey's testimony regarding his actions and observations as he approached the collision and Mr. Fittanto's opinion, which relied on that testimony, must be barred as inadmissible under the Illinois Dead-Man's Act, 735 ILL. COMP. STAT. § 5/8-201. (Doc. 49, p. 2). The Dead-Man's Act bars an interested party from testifying on his or her own behalf to conversations or events that took place in the deceased's presence. *See Cowell v. Auction Broadcasting Co., LLC*, No. 3:15-CV-00877-DRH-DGW, 2017 WL 76925, at *7 (S.D. Ill. Jan. 9, 2017)(citing *In re Estate of Goffinet*, 742 N.E.2d

874, 877 (Ill. Ct. App. 2001)). Witnesses prohibited from testifying under the Dead-Man's Act must either be a participating litigant or have an interest in the outcome of the case and must be adverse to the party invoking the statute. *See People v. $5,608 U.S. Currency*, 835 N.E.2d 920, 923 (Ill. Ct. App. 2005). However, the Dead-Man's Act also applies to "any portions of [an expert's] opinion which are founded on testimony regarding events which took place in [the decedent's] presence." *Puckett v. Soo Line Railroad. Co.*, No. 88 C 1210, 1989 WL 55365, at *5 (N.D. Ill. May 15, 1989), rev'd on other grounds (7th Cir. 1990). As the rule defines the "universe of admissible evidence" on summary judgment, it is vital to consider whether its application bars Defendant Guffey's testimony and/or Mr. Fittanto's expert opinion prior to ruling on the motion for summary judgment. *Id.* at *7.

The Illinois Supreme Court has explained that the purposes of the Dead-Man's Act include: (i) protecting the decedent's estate from fraudulent claims, and (ii) equalizing the parties' positions in regard to introducing testimony. *See Gunn v. Sobucki*, 837 N.E.2d 865, 896 (Ill. 2005). However, the primary purpose of the act is to preserve fundamental fairness. *See Agins v. Schonberg*, 921 N.E.2d 1139, 1142 (Ill. Ct. App. 2009). Accordingly, when the Dead-Man's Act applies, neither party is able to testify as to the circumstances of an accident. *See Smith v. Tri-R Vending*, 619 N.E.2d 172, 178 (Ill. Ct. App. 1993). Equally, if a foundation for a witness's opinion consists of events occurring in the decedent's presence, "no foundation could be established to introduce an opinion, and lacking such, the opinion would be inadmissible." *Manning v. Mock*, 457 N.E.2d 447, 454 (Ill. Ct. App. 1983).

The Dead-Man's Act "is intended to remove the temptation of a survivor to testify

to matters that cannot be rebutted because of the death of the only other party to the conversation or witness to the event[;]" accordingly, the act only applies to events which occurred in the deceased's presence. *Hoem v. Zia*, 636 N.E. 2d 479, 483 (Ill. 1994). Because the Dead-Man's Act bars only testimony about events in the deceased's presence, the act applies only to conduct up until the adverse party may have had an opportunity to view the deceased's vehicle. *See Buczyna v. Cuomo & Son Cartage Co.*, 496 N.E.2d 1116, 1123 (Ill. Ct. App. 1986). Plaintiff therefore argues that Defendant Guffey's testimony regarding the events which occurred once he reached the crest of the overpass, thus giving him a view of Ms. Shutts's vehicle, should be barred. (Doc. 49, p. 4). Equally, Plaintiff asserts that any portion of Mr. Fittanto's opinion which relied on this testimony should also be barred. *Id.*

Defendants first respond that Defendant Guffey's testimony is not barred by the Dead-Man's Act because Mr. Scheiner could not have refuted it. (Doc. 53, p. 6). The Dead-Man's Act serves only to protect the decedent's interests in conversations or events in which the decedent could have offered evidence to refute the adverse party's testimony. *See Gunn*, 837 N.E.2d at 869 (internal citations omitted). Defendants claim that Mr. Scheiner could not have refuted Defendant Guffey's testimony because, at the time of the accident, Mr. Scheiner was legally blind. (Doc. 53, p. 6). In doing so, Defendants rely on *Moran v. Erickson*, in which the Court permitted testimony regarding the posted speed limit at the time of the accident, as the decedent could not refute that fact. 696 N.E.2d 780, 793 (Ill. Ct. App. 1998). However, in *Moran*, the Court stated that the question of the speed limit at the place of the accident "concerned a fact that existed independent of the

collision." *Id*. Neither party's testimony would impact the truth or existence of that fact; accordingly, it "did not fall within the substantive requirements of the Act." *Id*. This case does not stand for the proposition that a deceased's legal disability strips him or her of the right to protection under the Dead-Man's Act. To the contrary, Mr. Scheiner, if alive, may have had testimony regarding Ms. Shutts's actions prior to the accident which could bear on the issue of proximate causation. This hypothetical testimony would thus not necessarily be affected by Mr. Scheiner's blindness. Defendant Guffey's testimony is therefore hypothetically rebuttable and within the purview of the Dead-Man's Act.

Defendants next assert that Plaintiff waived Mr. Scheiner's protections under the Dead-Man's Act because Plaintiff's expert also relied on Defendant Guffey's testimony to render his opinion. (Doc. 53, p. 7). If the deceased's representative introduces testimony concerning an event which occurred in the deceased's presence, the representative has waived the protections of the act, and the opposing party may present testimony concerning the event to avoid presenting a one-sided picture of the occurrence to the trier of fact. *See Groark v. Anderson*, 584 N.E.2d 468, 471 (Ill. Ct. App. 1991) (internal citations omitted). However, taking a deposition or otherwise investigating the circumstances surrounding an accident does not constitute a waiver of the Dead-Man's Act. *See Hortman*, 434 F.2d at 84. Taking a party's deposition before trial does not constitute a calling of the deponent as a witness, and the estate therefore does not waive the disqualification of the witness under the Dead-Man's Act by conducting the deposition. *Id*.

Equally, Mr. Dickinson's preliminary reliance on the witness's testimony does not

remove the act's protections. This is because Mr. Dickinson reformulated his opinions without reference to the testimony after he received further data. Plaintiff notes that Defendants did not provide him with the GPS data essential to Mr. Dickinson's report until after the deadline for expert witness disclosure pursuant to Federal Rule of Civil Procedure 26. (Doc. 56, p. 4). Mr. Dickinson initially relied on Defendant Guffey's deposition testimony to prepare an opinion for disclosure. But, he reformulated his opinion without reference to Defendant Guffey's testimony when Defendants disclosed the GPS data. *Id*. As Mr. Dickinson's opinion relies on data other than Defendant Guffey's testimony, it does not paint a one-sided picture of the events preceding Mr. Scheiner's death that Defendants cannot answer. Accordingly, Plaintiff did not waive the protections of the Dead-Man's Act.

Although the Dead-Man's Act applies to bar both Defendant Guffey's testimony and the portion of Mr. Fittanto's opinion which relied on that testimony, it does not extend beyond that testimony to include all of Mr. Fittanto's findings. In his expert report, Mr. Fittanto indicates that he relied on a brief portion of Defendant Guffey's testimony, in which Defendant Guffey estimated how far apart the two vehicles were, whether Ms. Shutts's vehicle "fish-tailed" prior to the collision, and whether or how often Defendant Guffey attempted to apply the brake during this timeframe. (Doc. 47, Exh. 9, p. 4). However, Mr. Fittanto also conducted separate inspections of Defendant Guffey's vehicle and Ms. Shutts's vehicle. *Id*. These inspections also provided support for portions of Mr. Fittanto's opinion. *Id*. Critically, when evaluating the parties' respective speeds prior to the accident, Mr. Fittanto relied on the Crash Data Retrieval Report ("CDR") from the

Illinois State Police. *Id*. at p. 8. This data provided the foundation for Mr. Fittanto's opinion regarding how many seconds prior to the crash Defendant Guffey was traveling above the posted speed limit, as well as whether he decelerated. *Id*. at p. 11. Mr. Fittanto ultimately concluded that even if Defendant Guffey was traveling at forty-five miles per hour when Ms. Shutts lost control of her vehicle, he lacked the time to avoid the collision. Mr. Fittanto premised this conclusion on the CDR. *Id*. at p. 12. Indeed, the only portion of Mr. Fittanto's report in which he relies on Defendant Guffey's testimony is when he summarizes the testimony in a single paragraph on page four of the report. *Id*. at p. 4. Accordingly, that paragraph is inadmissible under the Dead-Man's Act, but the remainder of the report is admissible. Nevertheless, as this opinion merely raises a genuine issue of material fact as to whether Defendant Guffey's speed was a proximate cause of the accident in light of Mr. Dickinson's competing opinion, Defendants' motion for summary judgment is denied.

## CONCLUSION

For the above-stated reasons, the undersigned **DENIES** Defendants' motion for summary judgment. (Doc. 46).

**IT IS SO ORDERED.**

**DATED: November 17, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.11.17 13:43:51 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**